IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| GILL CONSTRUCTION, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 05-0608-CV-W-SOW |
| ) | |
| 18TH & VINE AUTHORITY, et al., ) | |
| ) | |
| Defendants. ) | |

ORDER

Before the Court are defendant American Jazz Museum, Inc.'s Motion for Summary Judgment (Doc. #88), defendant American Jazz Museum, Inc.'s Suggestions in Support, plaintiff Gill Construction, Inc.'s Suggestions in Opposition, and defendant's Reply. For the reasons stated below, defendant's motion is denied.

I. Background

Defendant American Jazz Museum, Inc. ("AJM") seeks summary judgment on plaintiff Gill Construction, Inc.'s ("Gill") claims against it. The material facts relevant to the pending motion are as follows:

On June 19, 2002, Jackson County Circuit Court Judge Thomas C. Clark ordered judgment in favor of plaintiff Gill against the 18th & Vine Authority ("the Authority") in an amount in excess of $1.8 million. This judgment became final in October of 2002. In July of 2002, the AJM was formed. Thereafter, the City of Kansas City, Missouri (the "City") terminated its management agreement with the Authority and entered into a new management agreement with AJM. The Court notes that these are the only relevant facts proffered by AJM in support of its motion for summary judgment.

Plaintiff Gill has set forth additional material facts. Since AJM did not respond to plaintiff Gill's additional facts in its Reply brief, the Court will accept plaintiff Gill's asserted facts as true for purposes of evaluating AJM's motion for summary judgment only. The facts asserted by plaintiff Gill that are relevant to the pending motion are as follows:

AJM was incorporated on July 18, 2002. The incorporators of AJM were Robert Firnhaber, Emanuel Cleaver, and Michael White. All three of these individuals were members of the Board of Directors of the Authority in 2002.

Following the judgment in favor of Gill in June of 2002, Heather Brown, a member of the City's Legal Department, created a memorandum dated July 8, 2002. This memo was addressed to the Board of Directors of the Authority. This memo outlines various options that could be pursued in an effort to avoid paying the June 2002 judgment amount to plaintiff Gill. Brown has testified that she discussed these options with the Board of Directors of the Authority. One of the options discussed was the termination of the City's management agreement with the Authority and the formation of a new entity to manage the jazz museum. It was believed that the formation of a new entity, and the transfer of the Authority's assets and the City subsidy to the new entity, would prevent plaintiff Gill from attaching the revenue and other assets of the jazz museum and other jazz district establishments.

Ms. Brown wrote an e-mail to Michael White on July 10, 2002, stating that "Besides the city contract (there is $587,000 left on the contract), we need to stop the revenue stream from admissions, etc. from flowing into the Authority." Thereafter, White was one of the AJM incorporators who created the new entity, AJM, on July 18, 2002. AJM had the same responsibilities and obligations as the Authority had previously had and received all of the money

previously appropriated to the Authority. AJM retained the employees of the Authority. Juanita Moore, the Executive Director of the Authority, became the Executive Director of AJM.

On August 16, 2002, Ms. Brown sent a confidential memo to Ms. Moore stating that the new structure "will protect the current revenues from the museum operations and the City subsidy from attachment by Gill Construction and Gill's creditors."

The AJM incorporators assisted in the preparation of the documents necessary to form AJM. The AJM incorporators and Ms. Moore were aware of the purpose behind the formation of AJM.

The Authority transferred its assets to AJM in August of 2002. AJM did not give the Authority anything of reasonably equivalent value in exchange for this transfer of assets. AJM executed a management agreement with the City, thereby accepting the subsidy funds that had previously been appropriated for the Authority.

## II. Standard

A motion for summary judgment should be granted if, viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Rafos v. Outboard Marine Corp., 1 F.3d 707, 708 (8th Cir. 1993) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). The moving party bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact for trial and that the movant is entitled to summary judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A party opposing a properly supported motion for summary judgment may not rest upon the allegations contained in the pleadings, "but must set forth specific facts showing there is a

3

Case 4:05-cv-00608-SOW   Document 126   Filed 09/21/06   Page 3 of 7

genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In reviewing a motion for summary judgment, this Court must scrutinize the evidence in the light most favorable to the non-moving party, according the non-moving party the benefit of every factual inference and resolving any doubts as to the facts or existence of any material fact against the moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158 (1970).

III. Discussion

A.  Missouri Uniform Fraudulent Transfer Act

Plaintiff Gill has asserted a claim against AJM for violating the Missouri Uniform Fraudulent Transfer Act, Sections 428.005 to 428.049, Mo. Rev. Stat. AJM argues that this claim should be dismissed because AJM did not transfer anything to anyone in an effort to defeat Gill's attempts to collect the 2002 judgment. Defendant AJM contends that it could not be involved in any conspiracy because it was not in existence at the time of the alleged conspiracy.

Plaintiff Gill responds that AJM's arguments ignore the actions taken by AJM's incorporators. As plaintiff states in its brief, the entire purpose for creating AJM was to enable the City to maintain the operation of the 18th & Vine jazz district establishments while avoiding payment of the June 2002 judgment in favor of plaintiff Gill. After AJM was incorporated, it passed a motion requesting that the Authority transfer assets and funds to it. Then, AJM accepted the transfer of the Authority's assets and entered into a management agreement with the City with knowledge that those assets and funds were being fraudulently conveyed to defeat the collection of the Gill judgment.

It appears from the record currently before the Court that plaintiff Gill had identified facts from which a jury could find that AJM is jointly and severally liable as a co-conspirator in the

4

plan to re-direct assets and revenues for the purpose of hindering, delaying, or defeating plaintiff Gill's efforts to collect its judgment. The AJM incorporators were members of the Authority's Board of Directors. Brown has testified that she discussed with the Board of Directors of the Authority options for avoiding payment of the Gill judgment. One of the options discussed by Ms. Brown and the Board was the formation of a new entity to manage the jazz museum and take over the other functions of the Authority.

Once incorporated in July, AJM took several steps in furtherance of the alleged conspiracy. AJM authorized its Executive Director to enter into a management agreement with the City, thereby accepting the City subsidy funds that had been appropriated for the Authority. AJM also accepted the assets and revenues of the Authority.

"A civil conspiracy is an agreement or understanding between two or more persons to do an unlawful act, or to use unlawful means to do an act which is lawful." Trimble v. Prancna, 51 S.W.3d 481, 500 (Mo. Ct. App. 2001). "It is not a cause of action in and of itself, but rather, it acts to hold the conspirators jointly and severally liable for the underlying act." Id. at 501. A general knowledge of the essential nature of the plan will suffice to hold a participant liable. State Farm Mut. Auto Ins. Co. v. Weber, 767 S.W.3d 336, 338 (Mo. Ct. App. 1989).

Missouri courts also enforce civil conspiracy fraudulent conveyance claims against newly created entities like AJM where income and revenue streams have been redirected to such an entity in order to avoid an attachment. Fischer v. Brancato, 147 S.W.3d 794 (Mo. Ct. App. 2004); Fischer v. Brancato, 174 S.W.3d 82 (Mo. Ct. App. 2005).

There is no basis for granting AJM's motion for summary judgment.

5

B.    42 U.S.C. §1983

AJM suggests that it cannot be held liable under 42 U.S.C. §1983 because it is a private corporation incapable of engaging in state action. Missouri law is clear that private parties can act "under color" of state law where they act in concert with state actors. Hawley v. Nelson, 968 F. Supp. 1372, 1388 (E.D. Mo. 1997), *aff'd* 141 F.3d 1168 (8th Cir. 1998). *See also*, Youngblood v. Hy-Vee Food Stores, Inc., 266 F.3d 851, 855 (8th Cir. 2001)("a private party acts under the color of state law, for purposes of §1983, when he or she conspires with a state actor to deprive someone of their rights.")

Plaintiff Gill contends that the constitutional right is has been denied is meaningful access to the courts to enforce its 2002 judgment. While the Court previously held that the individual defendants had not taken actions that denied Gill access to the courts, the Court is persuaded that the actions taken by AJM warrant a broader definition of "access." It appears that the conspiracy between the City, the Authority, and AJM operated to deny plaintiff Gill meaningful access to the Courts by ensuring that the Authority had no assets or revenues that could be attached to satisfy the judgment. *See* Dorsett-Felicelli, Inc. V. County of Clinton, 371 F. Supp. 2d 183 (N.D.N.Y. 2005)(providers of special services for disabled children stated a cognizable §1983 claim where defendant conspired to cause the formation of a new competing service provider and then had the defendant county terminate its referrals of disabled children to the plaintiffs and instead referred children to an affiliate of the newly formed competitor).

AJM's motion for summary judgment on plaintiff Gill's §1983 claim is denied.

IV.  Conclusion

For the reasons stated above, it is hereby

6

ORDERED that defendant American Jazz Museum, Inc.'s Motion for Summary Judgment (Doc. #88) is denied.

        /s/Scott O. Wright
        SCOTT O. WRIGHT
        Senior United States District Judge

Dated: September 21, 2006

7